Jason Crews
1515 N Gilbert Rd Ste 107-204
Gilbert, AZ 85234
602-295-1875
Jason.crews@gmail.com

UNITED STATES DISTRICT COURT

FOR THE DISTRICT ARIZONA

PHOENIX DIVISION

| | |
|---|---|
| Jason Crews, | Case No.: 2:24-cv-00597-CDB |
| Plaintiff, | |
| vs. | First Amended Complaint for Violations of: |
| Insurance Pipeline Inc, | |
| And | 1.      NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.] |
| Andrew Shader | |
| Defendants. | 2.      WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.] |
| | DEMAND FOR JURY TRIAL |

///

COMPLAINT- 1

**COMPLAINT**

**Preliminary Statement**

1.   "When it comes to robocalls, you can only call those who, like Blondie, have said, 'Call me. Call me on the line.' If you call people who haven't opted in, then you face liability under the Telephone Communications Protection Act." *Perrong v. Bradford*, 2024 WL 2133801, at *1 (E.D. Pa. May 13, 2024).

~~1.~~2.  Plaintiff Jason Crews ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive~~,~~ nuisance calling practices. See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

~~2.~~3.  The Defendants in this action ~~Insurance Pipeline, Inc~~, Insurance Pipeline, Inc. ~~under the direction of~~and Andrew Shader, together orchestrated placing at least eight (8) illegal telemarketing calls using an Automated Telephone Dialing System ("ATDS") to a number assigned to a cellular service ~~which~~that was included on the national Do-Not-Call List.

~~3.~~4.  Plaintiff never consented to receive such messages.

**Parties**

~~4.~~5.  Plaintiff Jason Crews ("Crews") is and was a resident of Maricopa County, Arizona at all relevant times, and a resident of this District.

~~5.~~6.  Defendant Insurance Pipeline, Inc. ("Pipeline"), incorporated in Florida, ~~and~~is in the business of selling various insurance products to the public throughout the United States, including Arizona.

~~6.~~7.  Defendant Andrew Shader ("Shader"), a resident of Boward County, Florida, was at all times relevant to the owner and manager of Pipeline, who directed and authorized the illegal calls complained of herein.

**Jurisdiction & Venue**

~~7.~~8.  The Court has federal question subject matter jurisdiction over these TCPA claims: *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

COMPLAINT- 2

9. ~~The Court has specific personal jurisdiction over the Defendants because they have repeatedly placed calls to Arizona residents, including the Plaintiff. Defendants purposely placed calls to Arizona residents.~~

10. The Court has specific personal jurisdiction over Defendants because Defendants caused the events complained of herein to occur in Arizona; the TCPA claims arose from these events. Defendants had minimum contacts with Arizona to justify the assertion by an Arizona court of personal jurisdiction, *Meyers v. Hamilton Corp.*, 693 P.2d 904 (Ariz. 1985).

11. Defendants intentionally called or caused Plaintiff's number to be called multiple times by dialing an Arizona area code at least eight times within 12 months to advertise their services, despite Plaintiff's number being listed on the National Do Not Call Registry violating the TCPA.

~~8.~~12. During two of these calls, Defendants confirmed Plaintiff's residence in Arizona, multiple times (Exhibit 1 at Page 2 ¶ 25' Page 7 ¶¶12-14; Exhibit 2 at Page 2, ¶1; Page 4 ¶7; Page 7 ¶17; Page 12 ¶ 19; Page 13 ¶ 7, and Page 15 ¶ 14), after which they stated they would "…connect your call with a licensed agent" (Exhibit 1 at Page 2 ¶ 21), and "…connect your line with a licensed agent in your area" (Exhibit 2 at Page 2 ¶¶ 15-16), both Defendant Pipeline and Defendant Shader are separately licensed to sell insurance in Arizona, along with their employees Pearson and Judon, according to the National Association of Insurance Commissioners' searchable database.

~~9.~~13. The venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the calls to Plaintiff were placed into this District.

**The Telephone Consumer Protection Act**

8. In 1991, Congress enacted the TCPA to regulate the explosive growth of the automated calling industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]": Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

COMPLAINT- 3

9.    Under the TCPA, an individuals such as Shader may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, inter alia:

[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, Case 2:22-cv-02724-ER Document 1 Filed 07/11/22 Page 2 of 11 3 shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as of that person. 47 U.S.C. § 217 (emphasis added).

10.  In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

11.  The FCC confirmed this principle in 2013 when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either 5 section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network, LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013). 22. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

10.12. When considering individual liability under the TCPA, other Courts have agreed that an officer or individual involved in the telemarketing at issue may be personally liable under the TCPA. See, e.g., *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute.") (cleaned up) and *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011)

COMPLAINT- 4

("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

11.  In his capacity as the primary owner and manager of Insurance Pipeline, Inc, Shader personally participated in the complained-of actions by personally directing and authorizing the scripting and selecting of calls to be made, selecting, and orchestrating the calling strategy, including by choosing to use pre-recorded calls and approving the use of ATDSs, and personally selecting and approving all third parties who placed calls on Defendants' behalf advertising Defendants' products and services, essential activities, and Pipeline's primary distribution operations.

**Factual Allegations**

12.13.  To promote their services Defendants also relied on the use of ATDS systems.

13.14.  Plaintiff had no prior business relationship with Defendants.

14.15.  Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

15.16.  Defendant Shader is a "person" as defined by 47 U.S.C. § 153(39).

16.17.  The phone number (602) 295-XXXX ("Cell Number") belongs to Plaintiff.

18.  Plaintiff registered the Cell Number on the national Do-Not-Call registry.

17.19.  The Cell Number has been on the national Do-Not-Call registry since November 7, 2006.

18.20.  Despite this registration, Defendant Pipelines placed the calls or cause the calls to be placed as summarized in the following table with an Automated Telephone Dialing Systems ("ATDS").

| Date | Time | Caller ID |
|---|---|---|
| 12/2/23 | 8:21 AM | (602)295-1823 |
| 12/4/23 | 8:57 AM | (248)567-9057 |
| 1/31/24 | 8:12 AM | (775)408-4757 |
| 2/8/24 | 12:01 PM | (580)501-0794 |
| 2/8/24 | 12:40 PM | (775)408-4757 |
| 2/12/24 | 9:57 AM | (848)261-0381 |
| 2/12/24 | 10:50 AM | (774)295-1469 |
| 2/12/24 | 11:13 AM | (774)295-1481 |

COMPLAINT- 5

21.  The preceding calls followed nearly identical scripts.

22.  The callers on preceding calls provided the same business names such as "Health Insurance Marketplace".

23.  The callers on the preceding calls all advertised the same products.

~~19.~~24.  The Cell Number is assigned to a cellular phone used exclusively for personal residential purposes.

~~20.~~25.  Plaintiff did not consent to receive telephone calls via ATDS.

~~21.~~  The Cell Number is not associated with a business.

26.

Calls to Plaintiff

~~22.~~27.  On or about ~~December~~ February ~~8~~12, 2024, at 12:40 pm, Plaintiff received a call presenting caller ID (775)408-4757.

~~23.~~28.  Plaintiff was forced to wait several seconds, saying hello multiple times, heard a "bloop" and then was connected to an ~~Plaintiff was greeted by an~~ individual who identified themselves as "~~Mark~~Mark"~~.~~"

~~24.~~29.  ~~Kevin~~ Mark pitched the benefits ~~as a~~ "flex card"~~,~~ and requested some qualifying information from Plaintiff. Exhibit 1 at Page 1 ¶¶ 7-11.

~~25.~~30.  Because Plaintiff believed he had received several ~~other~~ similar phone calls in the past and ~~was unable to~~could not ascertain the identity of the person who provided his information to Mark.

31.  Mark said he was going to transfer Plaintiff to a "licensed agent". Exhibit 2 at Page 1 ¶¶ 2-6, 14-16.

~~26.~~32.  Mark eventually transferred Plaintiff to an individual who identified herself as Latoria Pearson ("Pearson"). Exhibit 1 at Page 3 ¶¶ 4-8.

~~27.~~33.  Pearson claimed to be from the "Health Insurance Marketplace" and attempted to enrolle Plaintiff in a subsidized health plan. Exhibit 1 at Page 3 ¶¶ 15-16.

COMPLAINT- 6

34.  Pearson attempted to convince Plaintiff to enrollee in a health plan for $365 per month. Exhibit 1 at Page 4 ¶¶ 17-21.

35.  Pearson also attempted to convince Plaintiff to enrollee in a dental and vision plan for $29.97 per month.  Exhibit 1 at Page 5 ¶¶ 22-23.

~~28.~~36.  Pearson initially attempted to conceal the identity of her employer.

~~29.~~37.  Pearson eventually provided her national producer license number to Plaintiff, confirming her identity.  Exhibit 1 at Page 9-10.

38.  Latoria stated that she was employed by Insurance Pipeline. Exhibit 1 at Page 10 ¶¶ 4-9.

39.  According to the Florida Department of Financial Services, Licensee Search, ~~Latoria~~ Pearson was employed by Insurance Pipeline, Inc.

~~30.~~

40.  Once Plaintiff believed he had established the ~~identity of the caller~~callers' ~~identitie~~identities, he requested that Pearson place him on their internal do-not-call list and send him a copy of their internal do~~-not-~~-not-call policies. Exhibit 1 at Page 10 ¶¶ 13-17.

41.  Pearson is an employee of Defendant Pipeline.

42.  According to the National Association of Insurance Commissioners' searchable database, Pearson is licensed to sell insurance in Arizona.

43.  Defendant Pipeline called the Plaintiff, who resides in Arionza, and employed Pearson to promote their products.

44.  According to the Florida Department of Financial Services, Pearson resided in Florida.

45.  Defendant Pipeline and Defendant Shader acting through their employee, Pearson, in the State of Florida are beholden to the FTSA.

46.  Acting through their employee Pearson, Defendant Pipeline made or knowingly allowed a telephonic sales call utilizing automated systems for the selection or dialing of telephone numbers without the prior express written consent of the Plaintiff.

COMPLAINT- 7

31.47.   As a resident of Florida, Defendant Pipeline knew they were subject to Florida law and the FTSA, and knowing and willfully disregarded it.

32.48.   On or about February 12, 2024, Plaintiff received a phone call, interrupting his work, from an individual who identified herself as "Rita" for "Riban" calling from the "E-Shipment Department" which followed a very similar script the other calls alleged herein. Exhibit 2 at Page 1 ¶¶ 4-6.

49.   Riban stated that Plaintiff was eligible for $1000 and  "ACA card". Exhibit 2 at Page 1 ¶¶ 8-10.

50.   Riban stated he would "connect your line with a licensed agent in your area". Exhibit 2 at Page 2 ¶¶ 15-16, Page 4 ¶¶ 7-10.

51.   Plaintiff stated that he lived in Arizona. Exhibit 2 at Page 4 ¶¶ 1-2.

33.   Rita requested some qualifying information from Plaintiff.

34.52.   Because Plaintiff believed he had received several other similar phone calls in the past and was unable to ascertain the identity of the provided his information to the caller.

35.53.   Rita attempted to transfer Plaintiff several different time, and eventually requested permission to call Plaintiff back later, which Plaintiff declined. Exhibit 2 at Page 4 ¶¶ 7-10

36.   Rita said she would put Plainiff on her do-not-call list.

37.54.   The caller eventually transferred Plaintiff to an individual who identified herself as Jasmine Judon ("Judon"). Exhibit 2 at Page 8 ¶¶ 18-19

55.   Judon attempted to convince Plaintiff to enrollee in a health plan for $82.22 per month. Exhibit 2 at Page 10 ¶¶ 25.

38.   Judon provided Plaintiff with a quote for insurance from United Health Care.

39.56.   Judon eventually identified her employer as Insurance Pipeline.  Exhibit 2 at Page 16 ¶¶ 7

COMPLAINT- 8

40.57.  Judon confirmed that Pearson was also an employee of Pipeline with whom she was familiar, but had no record of my call or my request to be placed on their internal do not call list. Exhibit 2 at Page 18 ¶¶ 3-5

41.58.  Plaintiff requested that Judon place him on their internal do-not-call list and send him a copy of their internal do not call policies. Exhibit 2 at Page 16 ¶¶ 16-23

42.59.  Plaintiff did not receive a copy of their internal do not-call-policy ("DNC Policy") from Defendants.

43.60.  Plaintiff avers and therefore believes this is because not such DNC Policy exists.

44.61.  If any DNC Policy exists, Plaintiff avers and therefore believes Defendant's employees and vendors were not trained in its existence and/or its usage.

45.62.  On or about February 9, 2024, Plaintiff sent an email to Defendant Pipeline requesting any evidence of consent in their possession, to be placed on their internal do-not-call list, and again requested a copy of their DNC Policy at by sending an email to o info@theinspipeline.com and, LICENSING@theinspipeline.com.

46.63.  Defendants did not send Plaintiff a copy of their DNC Policy.

64.  Plaintiff avers and therefore believes Defendants failed to produce their DNC Policy after multiple requests because no such policy exists.

65.  Judon is an employee of Defendant Pipeline.

66.  Judon is licensed to sell insurance in Arizona.

67.  Defendant Pipeline called Plaintiff, who lives in Arizona, and employed Judon to promote their products to Plaintiff over the telephone.

68.  According to the Florida Department of Financial Services, Judon resided in Florida.

69.  Defendant Pipeline acting through their employee, Pearson, in the State of Florida are beholden to the FTSA.

70.  Acting through their employee Judon, Defendant Pipeline again made or knowingly allowed a telephonic sales call to be made utilizing automated systems for the

selection or dialing of telephone numbers without the prior express written consent of the Plaintiff.

47.71.  As a resident of Florida, Defendant Pipeline knew they were subject to Florida law and the FTSA, and knowing and willfully disregarded it.

**Defendants' Use of an ATDS**

48.72.  Pipeline's representatives called frequently and from various different numbers.

49.73.  Pipeline's representatives used the identical or nearly identical scripts.

50.74.  Pipeline's representatives purposefully attempted to conceal the identity of their company.

75.  Plaintiff was subjected to long waits before being connected to Defendant Pipeline's representatives.

76.  For these reasons, Plaintiff believes the telemarkers used an ATDS to generate leads for Defendant's debt relief services.Plaintiff heard silence and was forced to say hello multiple times while waiting to be connected to Defendant's representatives.

77.  When answering, Plaintiff heard a "bloop" before being connected to Defendant's representatives.

—For these reasons, Plaintiff believes the telemarkers used an ATDS to generate leads for Defendant's debt reliefinsurance services.

51.78.

52.79.  The calls were conducted using an Automatic Telephone Dialing System (ATDS). As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator: *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

80.  In a recent ruling in *Crews v. National Solar et al.*, CV-23-01589-PHX-DWL, District of Arizona,  the Honorable Judge Lanza wrote, "Courts have accepted the plausibility of ATDS-related allegations. See, e.g., Schmidt, 2020 WL 6135181 at *5

COMPLAINT- 10

1  (concluding that "Schmidt has adequately alleged that AmerAssist utilized an ATDS to

2  place those calls" in part because "Schmidt alleges that, upon answering AmerAssist's

3  phone call, she was met with approximately three seconds of 'dead air,' after which she was

4  connected with a live agent"); *McCarver v. Cap. One, N.A.*, 2020 WL 2141804, *3 (C.D. Cal.

5  2020) ("Courts in this Circuit have held that experiencing 'dead air' on several calls may

6  raise a reasonable inference that the caller is using an ATDS."); *Lofton v. Verizon Wireless*

7  (VAW) LLC, 2015 WL 1254681, *5 (N.D. Cal. 2015) ("[G]eneral allegations [of use of an

8  ATDS] are sufficiently bolstered by specific descriptions of the 'telltale' pause after plaintiff

9  picked up each call until the agent began speaking, which suggests the use of a predictive

10  dialing system, and thus renders plausible the conclusory allegation that an ATDS was

11  used.")."  Here, the plaintiff has raised plausible allegations that raise a reasonable inference

12  that the caller is using ATDS.

13      ~~53.~~   The Third Circuit recently clarified that "Congress envisioned a broad

14  understanding of 'equipment'" that constitutes an ATDS. It also clarified that the analysis

15  of whether an ATDS was used in violation of the TCPA centers around "whether the

16  Defendants employ[s] [ATDS] capacities to make automated calls": *Panzarella v. Navient*

17  *Sols., Inc.*, 37 F.4th 867, 873, 878 (3d Cir. 2022). In so doing, it held that Congress intended

18  to "ban all autodialed calls" because Congress "found autodialer technology to be uniquely

19  harmful": Id. at 879 (cleaned up).

20      ~~54.~~81.  In enacting the ATDS prohibition, the Third Circuit cited favorably to

21  Congressional understanding "that telemarketers could transform ordinary computers into

22  autodialers through minor and inexpensive modifications," including by "relying on

23  computerized databases containing telephone numbers during their dialing campaigns": Id.

24  at 880 (cleaned up). The Third Circuit held that, in passing the TCPA's ATDS prohibition,

25  Congress intended to remedy the problems caused by callers using computer software to

26  dial numbers randomly or sequentially from a list or database: *Id.*

27

28

COMPLAINT- 11

55.82.  The system(s) that Defendants used to place the calls to Plaintiff is/are an ATDS because it would be illogical to dial a number manually, have Plaintiff answer the phone, and only then connect Plaintiff to a human being.

56.83.  Audible pauses, clicks, and beeps are hallmark indicia of ATDS systems. This supports the inference that Defendants used an ATDS, such as one that "use[s] a random [or sequential] number generator to determine the order in which to pick phone numbers from a pre-produced list": *Facebook*, 141 S. Ct. at 1171 n.7.

57.84.  Other courts have held, post-Facebook, that allegations similar to those herein of the absence of a relationship between the parties, and the random nature of the automation device (such as the ability to randomly generate caller ID numbers), are all indicia of use of a random or sequential dialing device. This gives rise to the inference at the pleadings stage that an ATDS was used to make the calls: *Camunas v. Nat'l Republican Senatorial Comm.*, No. 21-1005, 2021 U.S. Dist. LEXIS 100125 at *11 (E.D. Pa. May 26, 2021).

58.85.  No facts exist here to support the conclusion that Defendants was calling from a curated list of his past customers. In contrast to a company that dials calls *en masse* to multiple individuals from a list of telephone numbers (as here), a company that calls its existing customers utilizing an imported customer list does not place calls using an ATDS. Such calling uses a database targeting existing customers' information rather than computer-generated tables or lists of individuals to be called: *Panzarella*, 37 F.4th at 881–882.

86.  Plaintiff is ignorant of the exact process by which the system(s) used by Defendants operates other than by drawing the reasonable inference and alleging that the system(s) stores or produces telephone numbers randomly or possibly sequentially based on the facts ascertainable from the calls Plaintiff received, as outlined above. Indeed, as at least one district court explained, "The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage": *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); accord *Miles v. Medicredit, Inc.*, No. 4:20-cv- 01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

COMPLAINT- 12

59.87.   For all of these reasons, Plaintiff avers and therefore alleges Defendant's calls were placed using a random or sequential number generator.

### Defendants' Conduct Was Knowing and Willing

60.88.  Defendants intentionally called Plaintiff multiple times in order to advertise their services to Plaintiff.

89.  These calls were knowingly and intentionally made after multiple direct written and verbal requests from Plaintiff to be placed on their internal do-not-call list and to not be called by Defendant or their representatives.

Defendants knew their actions were in violation of the TCPA and willfully continued their conduct by calling Plaintiff multiple times despite the registration of his number on the National Do Not Call Registry and direct request not to be called Defendants knew his actions were in violation of the TCPA and willfully continued his conduct.

90.  .

### Shader's Personal Liability

91.  Defendant Shader personally participated in the calls at issue because Shader personally directed the calls to be transmitted throughout the United States, including numbers with Arizona area codes, which he knew were likely to belong to individuals, such as Plaintiff, who reside there.

92.  Shader is the principal officer of Defendant Pipeline, listed as President on their most recent 2024 Florida Profit Corporation Annual Report. Exhibit 3.

93.  Shader is listed as the principle contact on Defendant Pipeline's Better Business Bureau Profile, which Plaintiff incorporates by reference. https://www.bbb.org/us/fl/ft-lauderdale/profile/insurance-companies/insurance-pipeline-0633-92022108

94.  According to Defendant Shader's Wikitia profile, https://wikitia.com/wiki/Andrew_Shader, "[Shader] was responsible for the marketing of the insurance sector via phone sales. During his time there, Shader acquired substantial experience .. training…"

COMPLAINT- 13

95.  Shader closely holds Defendant Pipeline and is intimately involved in all decision-making and legal activities.

96.  Shader made the decision to hire agents such as Latoria Pearson ("Pearson") and Jasmine Judon ("Judon"), both of whom are licensed in Arizona, approved of training employees such as Pearson and Judon on the use of proprietary technology, and directed his employees to use the technology with the intention of breaking state and federal laws.

97.  Defendant Shader has direct and personal involvement in and ultimate control over every aspect of Defendant Pipeline's wrongful conduct that violated the TCPA and/or directly controlled and authorized this conduct.

98.  Defendant Shader, at all times relevant to this Complaint, acting alone or in concert with others, formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.

99.  There is a precedent holding corporate officers personally liable when they participate in the alleged actions: "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable." See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985). The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motors Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the' guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity.*" Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001) Quoting *Texas v. American Blastfax*: "The Court finds the above principles applicable to the TCPA[,] that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have

COMPLAINT- 14

violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up [sic] a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA. To be clear, the Court finds Greg and Michael Horne were the 'guiding spirits' an[d] the 'central figures' behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is far more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001).

100. Defendant Shader is the CEO, founder, and primary manager of Pipeline; he controls the day-to-day operations of Pipeline and directs his employees, agents, salespersons, and solicitors to make TCPA-violating phone calls.

101. Defendant Shader is not merely a bystander. He is the mastermind who schemed, planned, directed, initiated, and controlled illegal and fraudulent behavior.

102. Defendant Shader is well aware his conduct violated the TCPA and refused to alter their behavior. Defendant Shader is the principal director and officer of Defendant Pipeline and the only person with the power to make unlawful, fraudulent, and unethical behavior stop.

103. Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent: a "nuisance and invasion of privacy."

COMPLAINT- 15

**Vicarious Liability**

104. Defendant Pipeline, through their authorized representatives Pearson, Judon, Mark and Riban, made multiple auto-dialed robocalls to Plaintiff.

105. Defendant Pipeline is responsible for licensing, providing scripts, and training their employees engaging in telemarketing activities.

> NO LICENSE NO PROBLEM! We have agents of all experience levels and have an in house licensing department and provide scripts, training and help purchasing states. Exhibit 4.

106. Defendant Pipeline provides leads to their employees "Benefit from inbound Pre-qualified leads and live transfers ensuring you have the highest earning potential." *Id.*

107. Defendant Pipeline recruits employees to engage in telemarketing activities. "e comfortable and have experience on the phone in Health Insurance, customer service or telemarketing/sales related background." *Id.*

108. Pearson, Judon, Mark and Riban used software provided by Pipeline.

109. Pearson, Judon, Mark and Riban used proprietary information and systems provided by Defendant Pipeline.

110. Pipeline authorized Pearson and Judon Riba to make the phone calls at issue here.

111. Pipeline was aware of the phone calls being made by Pearson, Judon, Mark and Riban and accepted referrals from employees Pearson, Judon, Mark and Riban pursuant to the authorization that Pipeline provided to Pearson, Judon, Mark and Riban.

112. Pipeline gave access to their proprietary systems and software to Pearson, Judon, Mark and Riban.

113. Pipeline hired an offshore telemarketer to make phone calls on their behalf. Pearson, Judon, Mark and Riban is the agent of Pipeline, and the offshore telemarketer is the subagent of Pipeline.

114. The offshore telemarketer made the phone calls at the direction and control of Pipeline.

COMPLAINT- 16

115. Pipeline exercised interim control over whom and under what conditions referrals would be accepted.

116. Pipeline has been aware of the TCPA-violating phone calls made by salespersons and has ratified the behavior by maintaining the salespeople responsible for the violations and continuing to accept referrals despite knowledge of the violations.

117. Shader has made telemarketing in violation of the TCPA a regular source of referrals in multiple organizations with which he is associated.

118. A defendant may be held vicariously liable for Telephone Consumer Protection Act (TCPA) violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller. Telephone Consumer Protection Act of 1991, § 3(a), 47 U.S.C.A. § 227(b)(2). *Gomez v. Campbell-Ewald Co.*, 768 F.3d 872, 11 (9th Cir. 2014)

**Ratification**

119. Plaintiff delivered DNC requests to Pipeline on February 9, 2024.

120. Pipeline was informed verbally of Plaintiff's DNC request to their employee Pearson 8, 2023.

121. Pearson did not record Plaintiff's request to not be called.

122. Pipeline was informed verbally of Plaintiff's DNC request to their employee Judon February 12, 2023.

123. Judon confirmed Pearson did not record Plaintiff's request to be called.

124. Pipeline was fully aware of Plaintiff's desire to not be called and solicited for their services.

125. On December 2, 4,  January 2, and on once on January 31,  twice on February 8, Pipeline, and three times on February 12 with full knowledge of Plaintiff's desire to not be called and solicited, continued to call Plaintiff to advertise their products.

126. Defendant Pipeline consciously called Plaintiff with full awareness that the phone calls were violating the TCPA and that Plaintiff had delivered multiple DNC requests to Defendant Pipeline.

COMPLAINT- 17

127. Defendant Pipeline consciously called Plaintiff with full awareness that they did not maintain an internal do-not-call policy as required by the TCPA and that Plaintiff had requested it.

128. Defendant Pipeline consciously called Plaintiff with full awareness that they had not placed Plaintiff on their internal do-not-call list as required by the TCPA and that Plaintiff had requested it because they did not maintain one.

129. Even when a party is not directly liable, it may nevertheless be vicariously liable "under federal common law principles of agency for TCPA violations committed by third-party telemarketers." *DISH Network*, 28 FCC Rcd. at 6584. These agency principles include "not only formal agency [or actual authority], but also . . . apparent authority and ratification." *Id.*; see also *FDS Rest., Inc. v. All Plumbing, Inc.*, 241 A. 3d 222, 238n. 24 (D. C. 2020) (noting that a different provision of the TCPA, 47 U.S.C. § 217, creates vicarious liability for the acts of an agent). The plaintiff must establish the agency relationship between the defendant and the third-party caller to establish vicarious liability. See *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072-73 (9th Cir. 2019), as amended on denial of reh'g and reh'g en banc (May 6, 2019) (citing *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014), aff'd, 577 U.S. 153 (2016), as revised (Feb. 9, 2016)).

**The TCPA Prohibits All Automated Calls to Protected Numbers**

8. 130.  The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automated telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the party is charged for the call": 47 U.S.C. § 227 (b)(1)(A)(iii).

9. 131.  Congress singled out these services for special protection because Congress realized their special importance in terms of consumer privacy (as is the case with cellular phones): *Barr v. Am. Ass'n of Pol. Consultants Inc.*, 140 S. Ct. 2335, 2356, (2020) (Gorsuch, J. & Thomas, concurring in part and dissenting in part).

COMPLAINT- 18

10.132.  According to findings by the Federal Communications Commission ("FCC"), which is the agency Congress vested with the authority to issue regulations implementing the TCPA, such messages are prohibited because, as Congress found, automated or prerecorded messages are a greater nuisance and invasion of privacy than live ones, are costly, and are inconvenient.

11.133. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). 47 U.S.C. § 227(b)(1)(3).

12.134. These causes of action apply to users of any of four protected services (pager, cellular, specialized mobile radio [i.e., radio telephony locator beacon or dispatch system], or another radio common carrier service [i.e., ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged: *Lynn, Monarch Recovery Mgmt. Inc.*, 953 F. Supp. 2d 612, 623, (D. Md. 2013).

13.135. "Non-Emergency pre-recorded voice or autodialed calls to the destinations enumerated in 47 U.S.C. § 227(b)(1)(A) are permissible only with the prior express consent of the called party."

14.136. U.S.C. § 227(c)(2) states, "No person or entity shall initiate any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government" and defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person…": U.S.C. § 227(f)(15).

15.137. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used": In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003).

16.138. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered:

> [A] Consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

17.139. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

18.140. 47 C.F.R. § 64.1200 extends 47 U.S.C. § 227 and establishes several delivery restrictions. It states, "No person or entity may … [e]xcept as provided … initiate any telephone call … using an automatic telephone dialing system or an artificial or prerecorded voice."

19.141. 47 C.F.R. § 64.1200(a)(1) specifically protects the following: "emergency telephone line," "guest room or patient room of a hospital, health care facility, elderly home, or similar establishment," and/or "cellular telephone service." 47 C.F.R. § 64.1200(a)(2) further prohibits entities from "initiat[ing], or caus[ing]to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described… "

20.142. The National Do-Not-Call Registry allows consumers to register their telephone numbers and thereby indicate their desire to not receive telephone solicitations at those numbers: 47 C.F.R. § 64.1200(c)(2).

21.143. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator": *Id.*

COMPLAINT- 20

22.144. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provide a private right of action against any entity making those calls or "on whose behalf" such calls are promoted: 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

23.145. 47 C.F.R. § 64.1200(d) states, "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." It goes on to establish specific "minimum standards":

> (1) "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand…"
> (2) "[P]ersonnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list."
> (3) "If a person or entity making a call for telemarketing purposes … receives a request … not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name … and telephone number on the do-not-call list at the time the request is made … must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made."
> (4) "A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."
> (5) "A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls."

### Claims

### Count One

62.146.   Plaintiff incorporates the foregoing allegations as fully set forth herein.

63.147.   The foregoing acts and omissions of Defendant Pipelines and/or their affiliates, agents, and/or other persons or entities acting on Defendant Pipeline's's² behalf and acting at the behest of Defendant Shader constitute violations of the TCPA, 47 U.S.C.

COMPLAINT- 21

§ 227, by sending calls, except for emergency purposes, to Plaintiff's telephone which is assigned to a cellular telephone service using an ATDS.

64.148. As a result of their unlawful conduct, Defendant Pipelines invaded Plaintiff's personal privacy, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling him to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop his illegal calling campaign.

65.149. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or his affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls or sending messages, except for emergency purposes, to any number using an artificial or prerecorded voice in the futureATDS.

66.150. Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful violations of 47 U.S.C. § 227(b)(3)(B)

67.151. Defendant Pipeline's and Defendant Shader'ss² violations were willful and/or knowing.

**Count Two**

68.152. Plaintiff incorporates the foregoing allegations as fully set forth herein.

69.153. Defendant Pipelines at the behest of Defendant Shader called Plaintiff's private residential telephone number which was he registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2).

70.154. As a result of their unlawful conduct, Defendant Pipelines invaded Plaintiff's personal privacy, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(c)(3)(F) entitling him to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop his illegal calling campaign.

71.155. Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful violations of 47 U.S.C. § 227(c)(3)(F).

COMPLAINT- 22

72.156. Defendant Pipeline and Defendant Shader's² violations were willful and/or knowing.

**Count Three**

73.157. Plaintiff incorporates the foregoing allegations as fully set forth herein.

74.158. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

75.159. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

76.160. Defendant Pipeline failed to secure prior express written consent from Plaintiff.

77.161. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff without Plaintiff's prior express written consent.

162. Defendant Pipeline made and/or knowingly allowed the telephonic sales calls to Plaintiff to be made utilizing an automated system for the selection or dialing of telephone numbers.

24.163. Defendant Shader allowed the telephone sales calls to Plaintiff to be made utilizing an automated system for the selection or dialing of telephone numbers.

78. As a result of Defendant² Pipeline and Defendant Shader's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff was harmed and are eachis entitled to a minimum of $500.00 in damages for each violation. Plaintiff is entitled to an injunction against future calls. *Id.*

COMPLAINT- 23

1       164.  Defendant Pipeline and Defendant Shader's violations of the FTSA were

2  willful and/or knowing.

3       ——

### Relief Sought

WHEREFORE, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendant Pipeline and Defendant Shaders from calling telephone numbers using an ~~artificial or prerecorded voice and/or~~ ATDS.

B. That the Court enter a judgment awarding Plaintiff statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation;

C. Such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED on this June 26, 2024~~June 19, 2024~~.

_____

Jason Crews

COMPLAINT- 24

Recorded Phone Call   **Exhibit 1**

Recording Name:
[2024-02-08_124015-2]

Transcript Prepared By:



720-287-3710
3801 E. Florida Ave.
Suite 500
Denver, CO 80210

DUNS Number: 037801851
CAGE Code: 6C7D5
Tax ID #: 27-2983097

| | | |
|---|---|---|
| 1 | Crews: | Hello.  Hello. |
| 2 | Mark: | Hello.  (Inaudible - 00:00:09) is this Jason? |
| 3 | Crews: | I'm sorry.  Who is this? |
| 4 | Mark: | Uh, Mark from the Health Enrollment Center.  Is this |
| 5 | | Jason Crews? |
| 6 | Crews: | Yeah. |
| 7 | Mark: | Okay.  Well, actually, sir, I'm calling you because |
| 8 | | right now you're eligible for getting a flex card, |
| 9 | | which I'm gonna cover all of your utility bills and |
| 10 | | your groceries.  And with your flex card, you're also |
| 11 | | getting a $500 as a complimentary tip.  All right? |
| 12 | Crews: | Okay. |
| 13 | Mark: | So, uh, just confirming, do you have Medicare, |
| 14 | | Medicaid or any other insurance from Marketplace or |
| 15 | | VA? |
| 16 | Crews: | No. |
| 17 | Mark: | Okay.  Perfect.  And what's your annual household |
| 18 | | income, sir? |
| 19 | Crews: | About 20,000.  About 20,000. |
| 20 | Mark: | About 20,000.  That's (inaudible - 00:00:59) I'm gonna |
| 21 | | connect your call with a licensed agent.  Okay?  Then |
| 22 | | we're gonna check that if you're eligible for getting |
| 23 | | a zero dollar health coverage.  If you're eligible for |
| 24 | | it, then -- then they are going to make you enroll in |
| 25 | | that.  Okay? |

| | | |
|---|---|---|
| 1 | Crews: | Okay. |
| 2 | Mark: | All right.  So I'm putting you on hold just for a very |
| 3 | | second here, but, man, Jason, stay on the line with |
| 4 | | me.  Let me connect you with a licensed agent.  All |
| 5 | | right?  Can you please come close to the phone.  I |
| 6 | | cannot hear you properly, sir. |
| 7 | Crews: | What the fuck do you want? |
| 8 | Mark: | Sir, we just need to enroll you in a health coverage. |
| 9 | | Okay? |
| 10 | Crews: | I know.  You -- |
| 11 | Mark: | Because you are eligible for -- |
| 12 | Crews: | -- fuckin' said that al-fucking-ready.  Do it already. |
| 13 | | Jesus-fucking-Christ.  How stupid are you? |
| 14 | Mark: | Okay.  I'm putting you on hold, and kindly -- kindly, |
| 15 | | uh, just talk with a licensed agent.  Hold the line. |
| 16 | | Okay, please? |
| 17 | Crews: | Yeah. |
| 18 | Mark: | I'm putting -- |
| 19 | Crews: | As long as -- |
| 20 | Mark: | -- on a hold be with me. |
| 21 | Crews: | -- they're not as fucking stupid as you, it'll be |
| 22 | | fine. |
| 23 | Pearson: | (Inaudible - 00:02:40) please.  Please state your |
| 24 | | first name and your ZIP code. |
| 25 | Crews: | Jason, 85233. |

| | | |
|---|---|---|
| 1 | Pearson: | All right.  And were you looking for individual or a |
| 2 | | family plan? |
| 3 | Crews: | Individual. |
| 4 | Pearson: | Okay.  I can help you with that.  And, again, my name |
| 5 | | is Latoria.  I'm (inaudible - 00:03:08) Marketplace, |
| 6 | | and the call is being recorded for compliance |
| 7 | | purposes.  Do you receive a disability, Medicare, |
| 8 | | Medicaid, VA or Tricare benefit? |
| 9 | Crews: | I'm sorry.  You're -- you're breaking up there a |
| 10 | | little bit at the beginning.  What -- who is this? |
| 11 | | I'm sorry.  Can you hear me?  Hello? |
| 12 | Pearson: | So my name's Latoria.  I'm a licensed agent with |
| 13 | | Health Insurance.  Yes.  Can you hear me? |
| 14 | Crews: | Okay.  Yeah.  That's better. |
| 15 | Pearson: | All right.  So yes.  I am with the Health Insurance |
| 16 | | Marketplace. |
| 17 | Crews: | Okay. |
| 18 | Pearson: | Okay.  Are you looking -- all right.  And are you |
| 19 | | looking for an individual plan? |
| 20 | Crews: | Yes. |
| 21 | Pearson: | Okay.  Gotcha.  All right.  And do you receive any |
| 22 | | disability, Medicare, Medicaid, VA or Tricare |
| 23 | | benefits? |
| 24 | Crews: | No. |
| 25 | Pearson: | Okay.  Are you single or married? |

| 1 | Crews: | Single. |
|---|--------|---------|

1   Crews:     Single.

2   Pearson:   Do you claim any dependents on your taxes?

3   Crews:     No.

4   Pearson:   All right.  And may I have your date of birth?

5   Crews:     June 23, '82.

6   Pearson:   Okay.  And if you can estimate your income for the

7              year, what would that be?

8   Crews:     Mm, hard to say.  Probably around 20, 25, somewhere in

9              there.  Hello?  Are you there?

10  Pearson:   20 to 25.  Yep, still here.

11  Crews:     Okay.  It seems like there's a delay.

12  Pearson:   -- in the middle.  Okay.  Gotcha.  All right.  So I'm

13             here with ya.  So I've got -- I put in about the

14             middle range.  So I got 23,000 as the estimated

15             income.

16  Crews:     Okay.

17  Pearson:   So based off the information you will be approved for

18             a subsidy.  It looks like you qualify for $365 per

19             month towards a health plan.  So now, I'm gonna check

20             and see which health plan you'll benefit from and see

21             what type of extras it may come with.

22  Crews:     Okay.

23  Pearson:   All right.  And as I'm looking, is dental and vision

24             coverage important that you have?

25  Crews:     Well, that would be nice.



```
 1   Pearson:   Okay.  Okay.  So the best plan I'm seein' for you,
 2              which it gives you good copays, and then, even some
 3              extras.  So it's a plan through Carrier United
 4              Healthcare.  It's the UHC Bronze Value Plan.  So what
 5              you get, you'll have no charge for your doctor's
 6              office visit.  You'll be covered for medications that
 7              are $3 copay.  You'll also be, um, fully covered for
 8              telehealth services for coverage, that's for urgent
 9              care and your telehealth doctor office vis- -- visit.
10              That is zero dollar copay.  You also get extras.  So
11              part of those extra benefits are you get discounts at
12              your local Walgreens store.  You get free online
13              fitness classes.  You earn a $100 prepaid Visa card,
14              and then, you get also another one-year AARP
15              membership, which gives you, like, all types of other
16              discounts.  Now, if we were to upgrade for dental and
17              vision coverage, what you'll get is up to 50 percent
18              off of all of your services and your exams, so that's
19              up to 50 percent off of, like, your cleanings,
20              fillings, root canals, implants, braces.  This plan
21              has no exclusions, no annual maximums, no deductibles,
22              and no waiting periods.  So if we were to upgrade ya,
23              we're lookin' at $29.97 per month.
24   Crews:     Okay.  Yeah.  That sounds --
25   Pearson:   How does that sound?
```



1  Crews:     Mm-hmm.  That's good.

2  Pearson:   Okay.  So I can get y'all set up and enrolled with the

3             plan.  Now, your health benefits will become effective

4             for March the 1st, and your dental and vision upgrade,

5             that does become effective immediately.

6  Crews:     Okay.  All right.

7  Pearson:   All right.  And then, I'll just need to gather -- and

8             I just need to gather a few more pieces of information

9             to complete your enrollment.  All right.  And then,

10            how do you spell your first name?

11 Crews:     J-A-S-O-N.

12 Pearson:   Jason.  And then, how do you spell your last name?

13 Crews:     Crews, C-R-E-W-S.

14 Pearson:   Let me just -- okay.  Gotcha.

15 Crews:     So where are you located?

16 Pearson:   I'm physically in Florida.

17 Crews:     Oh, yeah?  What's the weather like there right now?

18 Pearson:   Let's see.  So today, like even right now, it's --

19            it's sunny, 72 degrees here.  Feels really good.

20 Crews:     Yeah.  That's nice.

21 Pearson:   We had a bit of a cold spell come through but it's

22            tryin' to warm up.

23 Crews:     Yeah.  That is nice.  It's raining here.

24 Pearson:   Oh, no.  Yeah.  The rain and cold just passed through.

25            I think this weekend, Saturday, Sunday, we're lookin'



| | | |
|---|---|---|
| 1 | | at, like, 78, 82 degrees.  So lookin' forward to it. |
| 2 | Crews: | Okay. |
| 3 | Pearson: | Yeah.  Everyone here has been, like -- everyone's |
| 4 | | battling the flu and all types of sickness because we |
| 5 | | have the weather goin' up and down and, like, we go to |
| 6 | | bed and it's, like, 30, 40 degrees, and we wake up, |
| 7 | | and it's 60-somethin'. |
| 8 | Crews: | Yeah. |
| 9 | Pearson: | So we're all over the place. |
| 10 | Crews: | Yeah. |
| 11 | Pearson: | And then, Jason, may I have your full address, please? |
| 12 | Crews: | Yeah.  It's 1515 North Gilbert Road, and that's in, um |
| 13 | | -- box number 107-204, and that's in Gilbert, Arizona |
| 14 | | 85234.  What part of -- |
| 15 | Pearson: | And let's see.  Are you a US citizen or a US national? |
| 16 | Crews: | Yeah.  What part of Florida are you in?  I have a -- I |
| 17 | | used to live near -- I used to live near Jacksonville. |
| 18 | Pearson: | Over in the Orlando area. |
| 19 | Crews: | Oh, okay.  Okay.  That's a couple -- I think that's, |
| 20 | | what, two, three hours away? |
| 21 | Pearson: | Yeah.  Yep, you got it.  About two hours, two to three |
| 22 | | with traffic.  Okay.  All right.  Then also, Jason, |
| 23 | | may I have your full Social, please? |
| 24 | Crews: | So I really -- I really need this insurance, um, but I |
| 25 | | got into some trouble a while back with some scammers, |

| | | |
|---|---|---|
| 1 | | so I'm just -- I'm just tryin' to be real careful. |
| 2 | | Um, is there any way to kind of verify that you're |
| 3 | | legitimate?  Like, how would I do that? |
| 4 | Pearson: | Absolutely.  Let's see if you can put my -- let's see |
| 5 | | if you can put my information in. |
| 6 | Crews: | Just Google it. |
| 7 | Pearson: | (Inaudible - 00:13:58) DBPR website.  Let's see. |
| 8 | | Okay.  All right.  NPN number, I'll give you that. |
| 9 | | I'm tryin' to see if we're on DBPR website or NIPR |
| 10 | | website to verify my license number, but my name is |
| 11 | | Latoria Pearson, and when you either search by my name |
| 12 | | or my license number, then you'll be able to pull me |
| 13 | | up as a licensed sales agent. |
| 14 | Crews: | Okay.  Pearson, P-I-E-R-S-O-N? |
| 15 | Pearson: | P-E-A -- it's P-E-A-R-S-O-N. |
| 16 | Crews: | Okay.  Kind of like a pear.  Okay.  Is Latoria, like, |
| 17 | | L-A-T-O-R-I-A? |
| 18 | Pearson: | Yep.  You got it. |
| 19 | Crews: | It's not comin' up.  Maybe -- |
| 20 | Pearson: | Yep.  You can pull me up.  We're actually on the NIPR. |
| 21 | | Go to the NIPR website.  So it's N, like Nancy, I, |
| 22 | | like igloo, P, like Paul, R, like Robert, dot com. |
| 23 | Crews: | Okay. |
| 24 | Pearson: | And then, forward slash -- it may be under NPN -- |
| 25 | Crews: | I think that worked.  It says, look up by -- by |



```
 1              license number.
 2   Pearson:   Okay.  Yep.  And then, you put in my --
 3   Crews:     What number is that?
 4   Pearson:   -- license number, that 199 number.
 5   Crews:     I don't think you gave that to me.
 6   Pearson:   199.
 7   Crews:     199.  Mm-hmm.
 8   Pearson:   815.
 9   Crews:     Mm-hmm.  98.
10   Pearson:   815.
11   Crews:     Mm-hmm.
12   Pearson:   16.
13   Crews:     19981516.  And that's in -- you said you're in --
14   Pearson:   Yes.
15   Crews:     -- Florida.  Gotta select a state here.  Here we go.
16              Florida.  I am not a robot.  It says, National
17              Producer Number not found.  19981516.  Um, let me try
18              --
19   Pearson:   Let me see if I'm with Florida.  Nope.  I definitely
20              should be out of Florida.  Let me put it in myself.
21              It wants me to log in.
22   Crews:     Let me try Arizona.  Maybe you're in Arizona and not
23              Florida.  Okay.  It says, National Producer Number for
24              Arizona but that doesn't say -- it just says the
25              number.  It doesn't have your name on it.  Um -- oh,
```

|     |           |                                                        |
| --- | --------- | ------------------------------------------------------ |
| 1   |           | there we go.  It -- it came --                         |
| 2   | Pearson:  | Let me see if there's a way to look it up with my      |
| 3   |           | name.                                                  |
| 4   | Crews:    | I think it came up.  Um, okay.  Here we go.  Latoria   |
| 5   |           | Pearson, and then, Davenport, Florida.  Okay.  All     |
| 6   |           | right.  Let me see.  Who is this?  The insurance --    |
| 7   |           | the INS Pipeline.com.  Is that yours?  Is that your    |
| 8   |           | company?                                               |
| 9   | Pearson:  | Yep.  That's it then.  Yep, you got it.                |
| 10  | Crews:    | Okay.  Let me just pull that up and look here then.    |
| 11  |           | Okay.  Got it.  Okay.  Perfect, perfect, perfect.  All |
| 12  |           | right.  Thank you.  Um, all right.  I think I've got   |
| 13  |           | everything that I need here.  Can you go ahead and put |
| 14  |           | me --                                                  |
| 15  | Pearson:  | You're welcome.                                        |
| 16  | Crews:    | -- on your do not call list, and then, send me a copy  |
| 17  |           | of your do not call policies, please?                  |
| 18  | Pearson:  | Okay.  So I can put you on our do not call list but    |
| 19  |           | I'm not the person that sends documentation, so --     |
| 20  | Crews:    | Okay.  Well --                                         |
| 21  | Pearson:  | Give me one moment here.                               |
| 22  | Crews:    | Yeah.  Whatever you need to do to have that done.      |
| 23  | Pearson:  | Okay.  So yeah.  I can definitely go ahead and put you |
| 24  |           | on the do not call then.                               |
| 25  | Crews:    | Okay.  And if you could pass that on to the Pakistanis |

1          that keep calling me, that'd be great.  All right.
2          Thank you.

OFFICE 720-287-3710 | FAX 303-952-9897 | WEB www.dittotranscripts.com
3801 E. Florida Ave., Suite 500, Denver, CO 80210

1                        TRANSCRIBER'S CERTIFICATE

2

3            I, Laurel Keller, do hereby certify that I have

4    listened to the recording of the foregoing; further that the

5    foregoing transcript, Pages 1 through 11, was reduced to

6    typewritten form from a digital recording of the proceedings

7    held, in this matter; and that the foregoing is an accurate

8    record of the proceedings as above transcribed in this matter on

9    the date set forth.

10            DATED this 25th day of June, 2024.

11

12

13            _Laurel Keller_____

14            Laurel Keller

15            Ditto Transcripts
             3801 E. Florida Ave.
16           Suite 500
             Denver, CO 80210
17           Tel: 720-287-3710
             Fax: 720-952-9897
18

19           DUNS Number: 037801851
             CAGE Code: 6C7D5
20           Tax ID #: 27-2983097

21

22

23

24

25



# Recorded Phone Call   Exhibit 2

## Recording Name:
[2024-02-12 - (848)261-0381 -
Potential_Scam_Alert_Beware_of_Unsolicited_Calls_Offering_Health_
Insurance_and_Cash_Rewards]

## Transcript Prepared By:



720-287-3710
3801 E. Florida Ave.
Suite 500
Denver, CO 80210

DUNS Number: 037801851
CAGE Code: 6C7D5
Tax ID #: 27-2983097

| | | |
|---|---|---|
| 1 | Crews: | Hello.  Hello. |
| 2 | Riban: | Hello. |
| 3 | Crews: | Yeah. |
| 4 | Riban: | This is Riban (ph).  I'm calling you from the |
| 5 | | (inaudible - 00:00:08) department.  How are you doing |
| 6 | | today? |
| 7 | Crews: | Uh-huh. |
| 8 | Riban: | Um, the reason on my call is that, Jason, you have |
| 9 | | been qualified to get a $1,000 check and an ACA card. |
| 10 | | So, please, I just need to just enter you. |
| 11 | Crews: | Uh-huh. |
| 12 | Riban: | All right.  Jason, can you -- your date of birth is |
| 13 | | 6/23/1981.  Am I right? |
| 14 | Crews: | Uh-huh. |
| 15 | Riban: | All right.  And your (inaudible - 00:00:38)? |
| 16 | Crews: | Yep. |
| 17 | Riban: | Now, you're -- what's your state? |
| 18 | Crews: | What'd you say? |
| 19 | Riban: | What's your state? |
| 20 | Crews: | My ZIP?  I can't understand you.  It sounds like you |
| 21 | | got -- |
| 22 | Riban: | What's your -- |
| 23 | Crews: | -- food in -- |
| 24 | Riban: | Which -- which state are you living right now? |
| 25 | Crews: | Oh, "vich."  I forgot you don't have the word -- you |



| 1 | | don't have Ws in Urdu.  I am living in Arizona. |
| 2 | Riban: | All right.  That's great.  All right.  Sir, what's |
| 3 | | your annual household income for this year? |
| 4 | Crews: | How about 2,000 -- 20 -- |
| 5 | Riban: | I have your -- |
| 6 | Crews: | Mm-hmm. |
| 7 | Riban: | I have your annual income as 20.  I'm right? |
| 8 | Crews: | Yeah.  That sounds right. |
| 9 | Riban: | All right.  And do you have Medicare, Medicaid or |
| 10 | | Marketplace? |
| 11 | Crews: | No. |
| 12 | Riban: | No.  All right.  And, sir, what's your age?  How young |
| 13 | | you are? |
| 14 | Crews: | 41. |
| 15 | Riban: | 41.  All right.  Okay, sir.  I'm simply connect your |
| 16 | | line with a licensed agent in your area, so usually |
| 17 | | seven to eight minutes and they will hang up the line. |
| 18 | | And after my call, you'll receive your ACA card |
| 19 | | application and $1,000 (inaudible - 00:02:13) is this |
| 20 | | sound good to you? |
| 21 | Crews: | It sounds like a lie but go ahead. |
| 22 | Riban: | Um, no.  One -- one last time.  I will connect your |
| 23 | | line so you're 100 percent done by process and you |
| 24 | | will get your $1,000 check and the ACA card.  Okay? |
| 25 | | And after this call, I will put your number do not |

| | | |
|---|---|---|
| 1 | | call list. |
| 2 | Crews: | Whatever you say, liar. |
| 3 | Riban: | I promise.  Okay, sir? |
| 4 | Crews: | Yeah.  I'm sure your promises are very -- would you -- |
| 5 | | do you swear that on your mom's life? |
| 6 | Riban: | Uh-huh. |
| 7 | Crews: | Okay.  Sure.  Swearin' on your mom's life.  I believe |
| 8 | | you.  Go ahead. |
| 9 | Riban: | Thank you.  You believe me.  So I will transfer your |
| 10 | | call with a licensed agent in your area.  So I'm just |
| 11 | | short -- making a short recording with you for a |
| 12 | | calling and verify purposes.  So here we go.  Okay? |
| 13 | | This is Riban with (inaudible - 00:03:13) center on |
| 14 | | the recorded line.  How are you doing today, Mr. |
| 15 | | Jason? |
| 16 | Crews: | I'm fine.  We just talked. |
| 17 | Riban: | I'm good.  Thanks for asking.  Sir, the reason I |
| 18 | | called is many people are calling for assistant and |
| 19 | | help for their health insurance or their Marketplace. |
| 20 | | They no need to pay anything from their pocket.  We |
| 21 | | are presenting the (inaudible - 00:03:30) affordable |
| 22 | | care (inaudible - 00:03:35) I just need to verify a |
| 23 | | few basic details.  Are you between the ages of 18 to |
| 24 | | 54? |
| 25 | Crews: | Yep. |

| | | |
|---|---|---|
| 1 | Riban: | Which state are you living right now? |
| 2 | Crews: | Arizona. |
| 3 | Riban: | Where do you have Medicare, Medicaid or Marketplace? |
| 4 | Crews: | Nope. |
| 5 | Riban: | Do you have health insurance from employer? |
| 6 | Crews: | No. |
| 7 | Riban: | All right.  Well, last thing before I connect you with |
| 8 | | the licensed agent in your area, do I have your |
| 9 | | permission to call you back on this provided number if |
| 10 | | (inaudible - 00:04:12)? |
| 11 | Crews: | No. |
| 12 | Riban: | All right, sir.  I'm simply connect your line with a |
| 13 | | licensed agent in your area.  So it's saving me -- and |
| 14 | | you don't tell them I give you $1,000 check.  Okay? |
| 15 | Crews: | Okay.  I'll be sure to tell them. |
| 16 | Riban: | You don't tell them.  Okay?  And licensed agent take |
| 17 | | your application.  Okay?  Just licensed agent has a |
| 18 | | portion so you will give them answers (inaudible - |
| 19 | | 00:04:48) all right, sir? |
| 20 | Crews: | Okay. |
| 21 | Riban: | All right.  I connect your line with a licensed agent |
| 22 | | in your area.  Please remain on the line.  You're such |
| 23 | | a humble guy.  I will highly appreciate your patience. |
| 24 | | Stay with me.  Okay?  Okay? |
| 25 | Crews: | Okay.  Slut. |

| | | |
|---|---|---|
| 1 | Riban: | All right.  The bell is ringing. |
| 2 | Crews: | Yeah.  I'm sure it is. |
| 3 | Riban: | The bell is ringing.  Hello. |
| 4 | Crews: | I'm still here. |
| 5 | Riban: | I'm so -- I'm so sorry, sir.  I will connect your line |
| 6 | | one more time.  (Inaudible - 00:07:36) of the line. |
| 7 | | Okay?  All right, sir? |
| 8 | Crews: | I'm still here, bitch fist. |
| 9 | Riban: | All right.  Make sure you remaining on the line.  I'm |
| 10 | | trying to connect your line with the licensed agent in |
| 11 | | your area, so stay with me. |
| 12 | Crews: | Yeah.  I'm sure. |
| 13 | Male: | One moment.  My name's (inaudible - 00:09:42) |
| 14 | | insurance agency.  (Inaudible - 00:09:43) Medicaid, |
| 15 | | Medicare, VA or other coverage? |
| 16 | Crews: | Yep.  Hello? |
| 17 | Riban: | Hello. |
| 18 | Crews: | Yep. |
| 19 | Riban: | Sir, do you have Medicare, Medicaid or any other |
| 20 | | insurance? |
| 21 | Crews: | Uh, I meant to say no. |
| 22 | Rabin: | You say there yes? |
| 23 | Crews: | Oh, sorry.  I wasn't payin' attention.  It took so |
| 24 | | long for you to -- it took you so long. |
| 25 | Riban: | All right.  Stay with me.  I one more time connect |



| | | |
|---|---|---|
| 1 | | your line.  Okay?  Okay? |
| 2 | Crews: | Okay. |
| 3 | Riban: | And my licensed agent ask you, do you have Medicare, |
| 4 | | Medicaid or any other insurance, so what do you -- |
| 5 | | will be your answer? |
| 6 | Crews: | My answer will be no because I want to get $1,000. |
| 7 | Riban: | No.  You stated no.  Okay? |
| 8 | Crews: | That's what I said. |
| 9 | Riban: | All right. |
| 10 | Crews: | Mm-hmm. |
| 11 | Riban: | Okay.  So my licensed agent ask you, do you have |
| 12 | | Medicare, Medicaid or any other insurance, what will |
| 13 | | be your answer? |
| 14 | Crews: | Mm-hmm. |
| 15 | Riban: | What will be your answer, sir? |
| 16 | Crews: | I'm sorry.  I can't understand what you're saying.  It |
| 17 | | sounds like you have food in your mouth.  Swallow -- |
| 18 | | swallow the cum and then -- |
| 19 | Riban: | Do you -- |
| 20 | Crews: | Swallow the cum and then talk. |
| 21 | Riban: | Do you have Medicare, Medicaid or any other insurance, |
| 22 | | what will be your answer? |
| 23 | Crews: | My answer will be no. |
| 24 | Riban: | All right.  (Inaudible - 00:11:36) connect your line |
| 25 | | one more time. |

| | | |
|---|---|---|
| 1 | Crews: | Are you drunk?  You sound like you're drunk. |
| 2 | Female: | (Inaudible - 00:12:06) your call is being recorded for |
| 3 | | quality and compliance purposes.  My name is |
| 4 | | (inaudible - 00:12:11) insurance agent with Covine |
| 5 | | (ph) Insurance Agency.  Do you currently have |
| 6 | | Medicare, Medicaid, VA, Tricare or employer coverage? |
| 7 | Crews: | No. |
| 8 | Female: | And do you have any active health insurance at the |
| 9 | | moment, like Marketplace or an employer plan? |
| 10 | Crews: | No. |
| 11 | Female: | Okay.  And based on your income and household size, |
| 12 | | would you like to see if you qualify for the low cost |
| 13 | | or possibly zero dollar health insurance through the |
| 14 | | Marketplace? |
| 15 | Crews: | Sure. |
| 16 | Female: | Okay.  And what state do you live in? |
| 17 | Crews: | Arizona. |
| 18 | Female: | Okay.  And it is based on income and household size. |
| 19 | | Do you have any dependents that you claim on your |
| 20 | | taxes? |
| 21 | Crews: | No. |
| 22 | Female: | Okay.  What would you say your income is, uh, for the |
| 23 | | year? |
| 24 | Crews: | About 20,000. |
| 25 | Female: | And what is your first name? |

| | | |
|---|---|---|
| 1 | Crews: | Jason. |
| 2 | Female: | And your last name? |
| 3 | Crews: | Crews. |
| 4 | Riban: | Hello? |
| 5 | Crews: | Yep.  I'm here. |
| 6 | Riban: | Uh, sir, what my licensed agent ask you? |
| 7 | Crews: | They asked me what my name was and I said what my name |
| 8 | | was. |
| 9 | Riban: | Oh, I'm so sorry, sir.  The line was disconnected of |
| 10 | | connect issues, so I will more than connect your line. |
| 11 | | Okay?  Stay with me.  Don't hang up the line. |
| 12 | Crews: | Uh-huh. |
| 13 | Riban: | You're such a humble guy.  I will highly appreciate |
| 14 | | your patience. |
| 15 | Crews: | Yeah.  I'll bet. |
| 16 | Riban: | Stay with me, sir.  I'm just connect your line. |
| 17 | Crews: | Cum dumpster. |
| 18 | Judon: | Hi.  This is Jazz.  I'm with the Health Marketplace. |
| 19 | | Can you state your first name and ZIP code? |
| 20 | Crews: | Jason, 85234. |
| 21 | Judon: | Thank you.  Again, this is Jazz.  I am a licensed |
| 22 | | agent with the Health Insurance Marketplace.  This |
| 23 | | call is being recorded for compliance purposes.  Do |
| 24 | | you currently have disability, Medicare, Medicaid, VA |
| 25 | | or Tricare coverage? |

| 1 | Crews: | No. |
|---|---|---|
| 2 | Judon: | May I have your date of birth? |
| 3 | Crews: | June 23, '82. |
| 4 | Judon: | And besides yourself, do you claim anyone on your |
| 5 |  | taxes, such as a spouse or children? |
| 6 | Crews: | No.  It's just me. |
| 7 | Judon: | Okay.  Do you know what your estimated yearly income |
| 8 |  | is for this year? |
| 9 | Crews: | Mm, I don't know.  Probably like around 20, 25, |
| 10 |  | somewhere in there. |
| 11 | Judon: | 25.  Okay.  So based on what you shared you with me, |
| 12 |  | you would qualify for $353 of the tax credit which |
| 13 |  | would be applied monthly to your health insurance |
| 14 |  | plan.  Do you currently have coverage? |
| 15 | Crews: | No. |
| 16 | Judon: | And are you also needing dental and vision or just |
| 17 |  | medical? |
| 18 | Crews: | Um, dental and vision would be nice. |
| 19 | Judon: | Okay.  So I was able to find you a no cost medical |
| 20 |  | plan with United Healthcare.  So the health plan by |
| 21 |  | itself wouldn't cost you anything monthly.  You'd have |
| 22 |  | no copay to the primary care doctor, a $3 copay for |
| 23 |  | generic medications, and to see a specialist it's a |
| 24 |  | $150 copay, combined with a dental and vision plan |
| 25 |  | would bring the monthly total to $39.97.  That would |

| | | |
|---|---|---|
| 1 | | be due today.  Would that be within budget for you? |
| 2 | Crews: | Mm, yeah, probably.  Uh, do you have anything that -- |
| 3 | | I mean, that's -- that's a -- do you have anything |
| 4 | | with, like -- like, lower deductibles?  That seems |
| 5 | | like a lot. |
| 6 | Judon: | Let me see.  So we do have another United Healthcare |
| 7 | | plan that would still give you no copay to the primary |
| 8 | | care doctor, a $20 copay to see the specialist, $1 |
| 9 | | copay on generic medications.  The medical deductible |
| 10 | | is $1,000, and the monthly total for the health plan |
| 11 | | is $42.35 for just the health plan alone.  Um, if you |
| 12 | | did add the dental and vision, that would bring the |
| 13 | | monthly total to $82.22 per month. |
| 14 | Crews: | Okay.  And what does the -- what does the dental |
| 15 | | cover? |
| 16 | Judon: | So the dental, that would be through DenteMax.  This |
| 17 | | is a PTO network that gives you access to over 250,000 |
| 18 | | participating providers nationwide.  You get 50 |
| 19 | | percent off on all services including root canals, |
| 20 | | orthodontics and implants.  You get the same coverage |
| 21 | | for your vision care through Eye Benefits Network to |
| 22 | | cover your contacts, frames and lenses.  Now, the |
| 23 | | dental and vision plan does take effect the day that |
| 24 | | you enroll.  The medical plan will take effect on the |
| 25 | | 1st of March. |

| | | |
|---|---|---|
| 1 | Crews: | Okay.  All right.  So 50 percent, so it's more like a |
| 2 | | -- it's not really insurance.  It's more like a |
| 3 | | discount plan.  I've gotta -- whatever dental -- |
| 4 | | because a root -- |
| 5 | Judon: | This is -- |
| 6 | Crews: | -- a root canal -- |
| 7 | Judon: | The dental plan is a discount plan, yes. |
| 8 | Crews: | All right.  Because, like, root canals are frickin' |
| 9 | | expensive, so it'd still be pretty expensive.  Uh, I |
| 10 | | have to figure out how much -- if that would be worth |
| 11 | | it or not.  Um, how does the vision work? |
| 12 | Judon: | So you still get 50 percent off on all services.  Uh, |
| 13 | | that would go towards the exam, contacts, frames and |
| 14 | | lenses, and you'd also have access to our Lasik |
| 15 | | provider network, if that was something you were |
| 16 | | considering as well. |
| 17 | Crews: | Okay.  I don't know how much Lasik costs but vision is |
| 18 | | not usually -- my glasses aren't usually as expensive |
| 19 | | as the dentist.  Um, can you -- can you do just the |
| 20 | | vision and not the dental or you have to do both? |
| 21 | Judon: | Uh, no.  It comes together. |
| 22 | Crews: | Comes together.  Okay.  Okay.  Um, yeah, yeah.  I'm |
| 23 | | interested.  Uh, sure. |
| 24 | Judon: | Okay.  So for the medical plan, were you wanting to do |
| 25 | | the one, uh, for 42.25 that gives you lower copays? |



| | | |
|---|---|---|
| 1 | Crews: | Yeah. |
| 2 | Judon: | Okay.  So with this plan, you would be eligible to |
| 3 | | participate in their rewards program, so once you're |
| 4 | | enrolled, um, you do have the option to earn up to |
| 5 | | $1,000 within the year to go towards personal or |
| 6 | | medical expenses by participating in their rewards |
| 7 | | program.  So I will go over there, uh, more towards |
| 8 | | the end of the call.  But did you have any other |
| 9 | | questions about the benefits? |
| 10 | Crews: | No, I don't think so. |
| 11 | Judon: | Okay.  So the next thing I need to do is finalize the |
| 12 | | application.  This will only take a couple of minutes. |
| 13 | | The first thing that I do need you to do is to confirm |
| 14 | | the spelling of your first and last name. |
| 15 | Crews: | J-A-S-O-N C-R-E-W-S. |
| 16 | Judon: | And you said your date of birth was June the 23rd of |
| 17 | | 1982? |
| 18 | Crews: | Yeah. |
| 19 | Judon: | And this is coverage for the State of Arizona? |
| 20 | Crews: | Yeah.  Where are you based out of? |
| 21 | Judon: | We're in Florida. |
| 22 | Crews: | Oh, okay.  Good weather there right now? |
| 23 | Judon: | In Florida.  It is.  It has been kinda cold, but, um, |
| 24 | | it's in the 70s now, so that's fairly decent -- |
| 25 | Crews: | Oh, that's real -- |

| | | |
|---|---|---|
| 1 | Judon: | -- for this time of year. |
| 2 | Crews: | That's real nice.  Yeah.  That's actually warmer than |
| 3 | | it is here right now. |
| 4 | Judon: | Oh, really? |
| 5 | Crews: | Yeah.  It's, like, in the 50s right now. |
| 6 | Judon: | I've got a friend that moved from -- oh, that's cold |
| 7 | | for Arizona.  I got a friend that moved there from |
| 8 | | Miami and said it gets super hot in the summertime, |
| 9 | | but they like it, but they said it does get |
| 10 | | dramatically hotter there than it does in Florida, so |
| 11 | | -- |
| 12 | Crews: | No.  It gets -- |
| 13 | Judon: | I'll have to see -- |
| 14 | Crews: | -- pretty dang hot. |
| 15 | Judon: | -- when I go out there to visit 'em. |
| 16 | Crews: | Yeah.  What part of, uh -- what part of Arizona did |
| 17 | | they move to? |
| 18 | Judon: | That's what he said.  They're in Phoenix. |
| 19 | Crews: | Oh, okay.  Yeah.  That's where I'm at. |
| 20 | Judon: | They're in Phoenix.  Yeah.  So they've been there for |
| 21 | | a couple years now.  Miami gets pretty hot, um, but |
| 22 | | they said it's -- it's nothing on Miami heat.  I'm |
| 23 | | like, okay.  We'll have to see. |
| 24 | Crews: | Is that where you're -- |
| 25 | Judon: | But, um -- |

|     |        |                                                              |
|-----|--------|--------------------------------------------------------------|
| 1   | Crews: | -- at?  You're out of Miami?                                 |
| 2   | Judon: | For your address, to make sure that your ID cards are        |
| 3   |        | mailed to the correct add- -- yes, yes.  Our office is       |
| 4   |        | based in -- well, actually, our office is based in,          |
| 5   |        | um, Fort Lauderdale, but Miami's not that far.               |
| 6   | Crews: | Sure.  Okay.  What -- what did you need?                      |
| 7   | Judon: | Um, for your mailing address, is that the same -- yes.       |
| 8   |        | Your mailing address, to start, if it is different           |
| 9   |        | than your residential.                                       |
| 10  | Crews: | Uh, mm, yeah.  Well, they're -- no.  They're the same.       |
| 11  |        | They're the same.                                            |
| 12  | Judon: | Okay.  And what is that, when you're ready?                  |
| 13  | Crews: | Oh, it's, um, 1515 North Gilbert Road, Number 107-204,       |
| 14  |        | and that's in Gilbert, Arizona 85234.                        |
| 15  | Judon: | Okay.  And do you have an email address you want to          |
| 16  |        | put down for your dental and vision card?  They will         |
| 17  |        | email you a digital copy of the card in case you             |
| 18  |        | wanted to use it right away.                                 |
| 19  | Crews: | Sure.  It's T-H-E, the number 1, G-O-F, as in Frank,         |
| 20  |        | E-R at protonmail.com.                                       |
| 21  | Judon: | Okay.  And then, the best contact number for you, is         |
| 22  |        | that the 602-641-1992 number?                                |
| 23  | Crews: | Wait.  Say that number again.                                |
| 24  | Judon: | We have 602-641-1992.                                        |
| 25  | Crews: | Uh, I don't know what that number is.  I don't know          |

|  |  |  |
|---|---|---|
| 1 |  | where that number comes from. |
| 2 | Judon: | Okay.  That's why we -- |
| 3 | Crews: | I don't know -- |
| 4 | Judon: | -- ask because -- |
| 5 | Crews: | -- where that number comes from. |
| 6 | Judon: | -- sometimes when they transfer, it doesn't always -- |
| 7 | Crews: | Oh, okay. |
| 8 | Judon: | -- it's not always your number.  So what is your best |
| 9 |  | contact number? |
| 10 | Crews: | 602-295-7930. |
| 11 | Judon: | Okay.  Now, since you're receiving the tax credit |
| 12 |  | monthly towards your health plan, they will need your |
| 13 |  | Social Security number.  Can you provide that for me |
| 14 |  | when you're ready? |
| 15 | Crews: | Um, sure.  I just -- so okay.  So I'm a little nervous |
| 16 |  | about giving that out ov- -- over the phone.  Um, is |
| 17 |  | there any way to, like, verify your -- who you say you |
| 18 |  | are? |
| 19 | Judon: | Um, yes.  I can give you my name, and then, the name |
| 20 |  | of our company and our number. |
| 21 | Crews: | Let me just Google it here. |
| 22 | Judon: | But we do have to have the Social to complete the |
| 23 |  | application. |
| 24 | Crews: | No.  That -- |
| 25 | Judon: | Do you have something to write with? |

| | | |
|---|---|---|
| 1 | Crews: | Yeah.  Let me just pull it up here on my computer. |
| 2 | Judon: | That's fine. |
| 3 | Crews: | I'll just Google it.  But what is it? |
| 4 | Judon: | Okay.  So the name of the company is Insurance |
| 5 | | Pipeline. |
| 6 | Crews: | Insurance Pipeline.  Okay.  Is it, like, dot com or -- |
| 7 | Judon: | No.  That's just the name of the company.  Um, our |
| 8 | | telephone number is 866-760-0239. |
| 9 | Crews: | Okay.  All right.  And what was your name again? |
| 10 | Judon: | My name is Jasmine Judon, and that's spelled J-U-D-O-N |
| 11 | | for the last name. |
| 12 | Crews: | Okay.  Let me just Google that real quick here.  You |
| 13 | | said Jasmine Judon? |
| 14 | Judon: | And the website is also InsurancePipeline.com.  Yes, |
| 15 | | mm-hmm. |
| 16 | Crews: | Okay.  There you are.  Okay.  Yeah.  It looks like |
| 17 | | it's got your information on here.  Okay.  Great.  All |
| 18 | | right.  Yeah.  Um, I think I actually -- I talked to |
| 19 | | someone from Insurance Pipeline a couple -- like, last |
| 20 | | week and they were supposed to put me on the do not |
| 21 | | call list.  So, um, can you go ahead and put me on |
| 22 | | your internal do not call list, and then, um, send me |
| 23 | | a copy of your internal do not call policy, please? |
| 24 | Judon: | Of our what policy? |
| 25 | Crews: | Your internal do not call policies. |

| | | |
|---|---|---|
| 1 | Judon: | Let me see.  I'm not showing that you spoke to anyone |
| 2 | | here -- |
| 3 | Crews: | Um -- |
| 4 | Judon: | -- but I can put you on the do not call list. |
| 5 | Crews: | Hold on.  Let me see the name real quick.  Hold on one |
| 6 | | second.  I asked him to pass it along to your |
| 7 | | Pakistani friends who keep calling me but let me see. |
| 8 | | What was his name?  I've got it written down here |
| 9 | | somewhere.  Search.  It was a guy. |
| 10 | Judon: | Well, if they're calling you, it's because you did |
| 11 | | request a quote, and if you don't want the quote |
| 12 | | because you're not comfortable giving your |
| 13 | | information, then that's fine, but if you do not want |
| 14 | | to proceed with the quote, I can just put you on the |
| 15 | | do not call list. |
| 16 | Crews: | Yeah. |
| 17 | Judon: | Is that -- |
| 18 | Crews: | I have -- |
| 19 | Judon: | -- what -- |
| 20 | Crews: | I have never -- I have never requested information on |
| 21 | | -- on this insurance.  I make decent money.  I've got |
| 22 | | a good job.  I -- I just want the calls to stop, and |
| 23 | | then, they just -- they just keep callin' and they |
| 24 | | keep callin' and they keep callin' until, at some |
| 25 | | point, I've got to, like, figure out who the heck is |

| | | |
|---|---|---|
| 1 | | callin' me, you know?  Um, and that's -- |
| 2 | Judon: | So you don't need a quote.  Okay. |
| 3 | Crews: | Latoria Pearson.  I forgot.  It was a girl.  Latoria |
| 4 | | Pearson, does that sound familiar? |
| 5 | Judon: | Yes.  Latoria does sound familiar.  It does. |
| 6 | Crews: | Oh, okay.  Yeah.  So I talked to her last time.  Okay. |
| 7 | | All right.  Well, I guess she didn't put me on the do |
| 8 | | not call list or she didn't tell the Pakistanis not to |
| 9 | | call me or whatever it is.  Um, all right.  Well, I |
| 10 | | appreciate you, uh, doin' that -- |
| 11 | Judon: | Mm-hmm. |
| 12 | Crews: | -- and, hopefully, I won't hear back from you or from |
| 13 | | them again. |
| 14 | Judon: | Thank you, Jason.  Take care. |
| 15 | Crews: | Bye. |

1                          TRANSCRIBER'S CERTIFICATE

2

3            I, Laurel Keller, do hereby certify that I have

4    listened to the recording of the foregoing; further that the

5    foregoing transcript, Pages 1 through 18, was reduced to

6    typewritten form from a digital recording of the proceedings

7    held, in this matter; and that the foregoing is an accurate

8    record of the proceedings as above transcribed in this matter on

9    the date set forth.

10           DATED this 25th day of June, 2024.

11

12

13                                    _Laurel Keller_____

14                                    Laurel Keller

15                                    Ditto Transcripts
                                      3801 E. Florida Ave.
16                                    Suite 500
                                      Denver, CO 80210
17                                    Tel: 720-287-3710
                                      Fax: 720-952-9897
18

19                                    DUNS Number: 037801851
                                      CAGE Code: 6C7D5
20                                    Tax ID #: 27-2983097

21

22

23

24

25

**2024  FLORIDA PROFIT CORPORATION ANNUAL REPORT**

DOCUMENT# P17000004768

**Entity Name:** INSURANCE PIPELINE INC

**Current Principal  Place of Business:**

2817 E OAKLAND PARK BLVD
STE 300E
FORT LAUDERDALE, FL  33306

**Current Mailing Address:**

820 NE 5TH TERRACE
FORT LAUDERDALE, FL  33304  US

**FEI Number: 81-5253175**

**Name and Address of Current Registered Agent:**

SHADER, ANDREW T
820 NE 5TH TERRACE
FORT LAUDERDALE, FL  33304  US

**FILED**
**Jan 12, 2024**
**Secretary of State**
**3078209132CC**

# Exhibit 3

**Certificate of Status Desired:** No

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:

Electronic Signature of Registered Agent                                                                 Date

**Officer/Director Detail :**

| Title | P | | Title | VP |
|---|---|---|---|---|
| Name | SHADER, ANDREW | | Name | SHADER, COREY |
| Address | 820 NE 5TH TERRACE | | Address | 820 NE 5TH TERRACE |
| City-State-Zip: | FORT LAUDERDALE FL 33304 | | City-State-Zip: | FORT LAUDERDALE  FL  33304 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: ANDREW SHADER                              PRESIDENT                    01/12/2024

Electronic Signature of Signing Officer/Director Detail                                                              Date

 **Jobs** ⌄    Health Insurance Agent    Mescalero, NM    🔍    Join now    Sign in

**Exhibit 4**

 **Health Insurance Agent**
Insurance Pipeline Inc · Fort Lauderdale, FL    **Apply**

## Health Insurance Agent

Insurance Pipeline Inc · Fort Lauderdale, FL

**9 minutes ago** · ⊘ Be among the first 25 applicants

👥 See who Insurance Pipeline Inc has hired for this role

**Apply**    **Save**

---

Direct message the job poster from Insurance Pipeline Inc

👤 **Francis Pellegrini**
Recruitment & Licensing at The Insurance Pipeline Inc    ◲

ACTIVELY HIRING HEALTH INSURANCE AGENTS: $1,500-$3,000+/WEEK

IPI is an A-RATED Insurance enrollment agency located in Fort Lauderdale FL. We represent the major carriers in the country for the ACA - MARKETPLACE. We also provide products like Dental and Vision. We are looking for new and veteran agents to join our team either in office or remote.

NO LICENSE NO PROBLEM!
We have agents of all experience levels and have an in house licensing department and provide scripts, training and help purchasing states.

PAID WEEKLY - BASE PAY+COMMISION:
MINIMUM $1,500-$3,000+ Weekly and you are not charged for leads.

Premium Leads:
Benefit from inbound Pre-qualified leads and live transfers ensuring you have the highest earning potential.

More about Insurance Pipeline and who we are looking for:
The ideal candidate will have an outgoing attitude and passion for the industry. (DUAL LANGUAGE SPEAKERS)
Be comfortable and have experience on the phone in Health Insurance, customer service or telemarketing/sales related background. Being a good listener, controlling a conversation and strong communication skills are a must.

Open Enrollment is around the corner! Contact for further consideration:
tammers@theinspipeline.com – (442)-361-9267

**Show less** ⌃

Employment type
Full-time

 Referrals increase your chances of interviewing at Insurance Pipeline Inc by 2x

**See who you know**

---

🔔 Get notified about new **Health Insurance Agent** jobs in **Fort Lauderdale, FL**.

**Sign in to create job alert**

## Similar jobs

**Claims Representative**
Cigna Healthcare
United States
3 days ago

**Entry Level Insurance Agent (Average 75-150K)**
Sudhoff Agency
Frederick, MD
1 week ago

**Entry Level Insurance Agent (Average 75-150K)**
Sudhoff Agency
Cambridge, MA
1 week ago

**Entry Level Insurance Agent (Average 75-150K)**
Sudhoff Agency
Johnson City, TN
1 week ago

**Entry Level Insurance Agent (Average 75-150K)**
Sudhoff Agency
Reading, PA
1 week ago

**Insurance Verification Specialist-REMOTE**
The US Oncology Network
Henderson, NV
11 hours ago

**Show more jobs like this**

---

Representative - Remote
Propel Personnel
Round Rock, TX
6 days ago

**Insurance Account Position - State Farm Agent Team Member**
State Farm Agent
Auburn, AL
5 days ago

**Insurance Customer Service Representative - Remote**
Propel Personnel
San Jose, CA
5 days ago

**Insurance Client Services Agent - Harrisburg, PA**
AAA Central Penn
Harrisburg, PA
2 weeks ago

**Insurance Customer Service Representative - Remote**
Propel Personnel
Reno, NV
1 day ago

**Insurance Account Position - State Farm Agent Team Member - Remote**
Get It Recruit - Marketing
Philadelphia, PA
3 weeks ago

**Insurance Customer Service Representative - Remote**
Propel Personnel
San Bernardino, CA
5 days ago

**Insurance Customer Service Representative - Remote**
Propel Personnel
Carrollton, TX
5 days ago

**Insurance Account Position - State Farm Agent Team Member**
State Farm Agent
Glen Allen, VA
2 weeks ago

**Insurance Customer Service Representative - Remote**
Propel Personnel
Minneapolis, MN
3 days ago

 **Looking for a job?**
Visit the Career Advice Hub to see tips on interviewing and resume writing.
**View Career Advice Hub**

---

© 2024    About    Accessibility    User Agreement    Privacy Policy    Your California Privacy Choices    Cookie Policy    Copyright Policy    Brand Policy    Guest Controls
Community Guidelines    Language